**BANK OF AMERICA, N.A., Plaintiff,**

v.

**Michael John FLETCHER, Lori Fletcher, United States of America, ex. re. Internal Revenue Service, et. al. Defendants.**

No. 03–CV–765–C.

United States District Court, N.D. Oklahoma.

Aug. 16, 2004.

Matthew J. Hudspeth, Tulsa, OK, for Plaintiff.

Joan Stentiford Ulmer, US Department of Justice Tax Division, Washington, DC, for Defendants.

## ORDER

H. Dale COOK, District Judge.

Before the Court are cross motions for summary judgment filed by the plaintiff Bank of America (Bank), and one of the party defendants, the United States of America ex rel. Internal Revenue Service (IRS). Both the Bank and the IRS are asserting liens against real property owned by defendants Michael and Lori Fletcher. The movants seek a determination, as a matter of law, as to the priority of lien claims. The facts are undisputed.

### Statement of Undisputed Facts

1. On July 28, 1988, the defendants Michael and Lori Fletcher purchased a residence located at 7415 East 77th Street in Tulsa, Oklahoma.

2. On April 18, 1996, the Fletchers executed a home equity line of credit agreement with Bank IV (now Bank of America). The Bank received an executed note and mortgage on the Fletcher's residential property. The mortgage was recorded with the Tulsa County Clerk on April 24, 1996. Plaintiff Bank of America is the present holder of said note and mortgage.

3. The line of credit had a limit of $47,500 and was to terminate in ten years. The note required payment of $730.23 monthly installments. The Fletchers' nonpayment of a monthly installment would result in default and acceleration of the total amount due under the note. The Bank retained the option to foreclose on the property, in the event of default.

4. Under the terms of the credit agreement, the Fletchers could obtain a cash advance ( or loan) by writing special "equity line" checks, or by writing an initial "equity line" draft located at any of the Bank's offices. The Bank had the right to dishonor any equity line check which

would take the account over the $47,500 limit.

5. Between September 13, 1996 and October 21, 1997, the Bank advanced the Fletchers $47,336. The Fletchers made at least the required monthly installment payments, and on October 21, 1997, paid the balance due under the loans.

6. Between June 16, 1999 and June 21, 1999, the Bank advanced $28,702 and the Fletchers continued to make at least the required monthly installments. On July 15, 1999, the Fletchers again paid the balance due under the loans.

7. On August 24, 1999, the Fletchers transferred title to the real property into a revocable trust.

8. On October 30, 2000, the IRS filed a notice of tax lien in the records office of Tulsa County with respect to a 1998 unpaid tax liability of $1,804,137. The Bank did not receive actual notice of the tax lien.

9. On January 5, 2001, the Bank advanced $25,000 to the Fletchers.

10. On January 5, 2001 the IRS filed notice of a tax lien for 1999 in the amount of $413,933. The Bank did not receive actual notice of the second tax lien filing.

11. On January 8, 2001, the Bank advanced the Fletchers $20,000.

12. On January 16, 2001, the Bank made the last advance to the Fletchers in the amount of $1,498, which sum exceeded the Fletcher's line of credit with the Bank.

13. Between February 20, 2001 and January 10, 2003, the Fletchers made monthly payments to the Bank on the loans.

14. On February 14, 2003 and thereafter the Fletchers defaulted on the note and mortgage. The Fletchers owe the Bank $48,450 under the terms of their agreement.

15. On June 9, 2003, the Bank received actual notice of the tax liens when Bank personnel spoke with Tanya White with the IRS.

*Applicable Law*

Under 26 U.S.C. § 6322 of the Federal Tax Act of 1966, a tax lien created by § 6321 arises at the time the assessment is made and continues until the liability either is paid or becomes unenforceable by reason of lapse of time. However, the lien is not valid against any holder of a "security interest" until notice is given as required by § 6323(f) (i.e. filing in the county records). Under 26 U.S.C. § 6323(a) a "security interest" is defined as:

> The term "security interest" means any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of any unsecured obligations, and (B) to the extent that, at such time, the holder has parted with money and money's worth.

Section 6323(d) of the tax code is controlling authority for the determination of the issue presented to the Court. It provides:

> **(d) 45–day period for making disbursements.**—Even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid with respect to a security interest which came into existence after tax lien filing by reason of disbursements made before the 46th day after the date of tax lien filing, or (if earlier) before the person making such disbursements had actual notice or knowledge of tax lien filing, but only if such security interest -

(1) is in property (A) subject, at the time of tax lien filing, to the lien imposed by section 6321, and (B) covered by the terms of a written agreement entered into before tax lien filing, and

(2) is protected under local law against a judgment lien arising, as of the time of tax lien filing, out of an unsecured obligation.

 In this case, a mortgage was given by the Fletchers in favor of the Bank to secure advances on a line of credit for a term of ten years. Pursuant to the terms of their note and mortgage, the Bank advanced monies to the Fletchers within the ten year term of the line of credit, both prior to and after, the IRS filed its tax lien in the records office. The only question before the Court is whether the federal tax lien or claim has priority over the loan payments received by the Fletchers *after* the expiration of the 45–day period for making disbursement under § 6323(d).

The Court finds, under the language of § 6323(d), the federal tax lien has priority over the mortgagee's security interest only as to the monies disbursed after the expiration of the 45–day grace period. In this instance, all the monies in dispute were disbursed after the 45 day grace period. This conclusion is supported by the legislative history of § 6323(d). *See*, S.1708, 89th Cong. (1966).

Prior to the 1966 amendment to the federal tax code, a lien for Federal taxes would arise when a taxpayer's liability was assessed. The lien attached to all of the property held by the taxpayer or subsequently acquired. The assessment was made when the unpaid tax liability was voluntarily entered on the tax forms filed by the taxpayer. Prior to the amendment, secured creditors were given priority over the tax lien only up to the time the IRS filed its tax lien in the county record's office. The amendment allowed for the 45–day grace period to provide an opportunity for a secured creditor to check the country records to determine whether a tax lien had been filed. Any advances made during the 45–day grace period were given priority over the tax lien. *See*, S. 1708 I. For priority to exist during the 45–day grace period, there must be a written agreement entered into before the tax lien filing and the security interest must be protected under local law against a judgment lien arising as of the time of the tax lien filing. *See*, S. 1708 II A(4). The 45–day grace period was "designed to make it unnecessary for the holder of a security interest to search the records more often than once every 45 days where one or more disbursements are to be made by him." *Id.*

There is no dispute that the notices of tax lien filed by the IRS on October 30, 2000 and on January 5, 2001 complies with § 6323(h)(1), and that the Bank made cash advances to the Fletcher on January 5, 2001 ($25,000), January 8, 2001 ($20,000) and on January 16, 2001 ($1,498). These advances were made after the grace period provided in § 6323(h). Thus, the Bank lost its priority lien status on December 15, 2000 which is the 46th day following the October 30, 2000, filing notice of the first tax lien on the real property here in question.

IT IS THEREFORE ORDERED that summary judgment be, and it is hereby, GRANTED in favor of defendant the United States of America ex. re. Internal Revenue Service and against the plaintiff, Bank of America on the parties' cross motions for summary judgment.